3195. NATIONAL REFRIGERATOR & BUTCHERS SUPPLY CO. *v.* PARMALEE.

1. Whenever one party to a case claims special damages against the other, he has the burden not only of showing that he has been damaged as alleged, but also of furnishing to the jury data sufficient to enable them to estimate with reasonable certainty the amount of the damages. It is not necessary, however, that the party on whom the burden thus rests should submit exact figures.

2. The rule which generally requires a party suffering damage from the neglect of another to diminish the damage does not require him to adopt a course which a reasonably prudent man would not have taken under all the circumstances.

DECIDED SEPTEMBER 23, 1911.

Attachment; from city court of Griffin—Judge Clark presiding. December 28, 1910.

*Robert T. Daniel,* for plaintiff in error.

*W. E. H. Searcy Jr.,* contra.

POWELL, J.   The controversy was over an alleged breach of warranty in the sale of a refrigerator.   The plaintiff claimed that it was warranted to produce such a degree of cold as to preserve his meats, and that it would not do so, and that he lost considerable meat through spoilage on that account.   The plaintiff did not keep any books or other memoranda as to the weights or values of the different pieces of meat that were spoiled from time to time; he did testify, however, to a general recollection on the subject.   He testified that there was a period of five hundred and twenty days, net, during which he was daily required to take out spoiled meat, the amount being greater on some days than on others.   He said it would average ten pounds per day.   He gave the values of the various kinds of meats that were lost, and, after giving these detailed values, claimed an average value of fifteen cents per pound. He swore also that his estimate was a low one.   His assistant estimated that three or four pounds per day were lost, on an average. He also detailed with more or less generality the sizes and kinds of meats that were lost.   The jury allowed $250, which was approximately equivalent to an allowance for a loss of twelve cents per pound on the basis of four pounds per day, or for a loss of fifteen cents per pound on the basis of three pounds per day.   It was substantially a finding according to the minimum estimate which the witnesses gave from their recollection.

1.   Where a party sues for specific damages, he has the burden of showing the amount of the loss, and of showing it in such a way that the jury may calculate the amount from the figures furnished, and will not be placed in the position where their allowance of any sum would be mere guesswork.   However, the party does not lose his right of action for the damages because he can not furnish exact figures.   It is often the case that witnesses are called on to testify to the weight of a thing though they have never weighed it; or to testify to length of time though they have kept no count of the days or hours; or to testify to value, which is usually a matter of opinion.   In all these cases, more accurate source of inquiry not being available, the witness states his best judgment, and this is re-

garded as being of evidentiary value. The jurors are not bound to accept the estimate or best judgment of a witness, but they may do so. If the witness be one of the parties and he gives his estimate in the form of a maximum and a minimum (as where he says it was not less than so much and not more than so much), that estimate which is most unfavorable to the witness should be taken, in the absence of other testimony. In all cases the witnesses are subject to thorough cross-examination as to the basis on which they have formed judgment, and if the cross-examination discloses that what purports to be an estimate or statement of judgment based on observation is nothing more than a mere guess, the jury should disregard it entirely. The evidence of the witnesses in the present case (taking the witnesses as being credible) showed with reasonable clearness that the plaintiff's loss was not less than the amount allowed by the jury; and, therefore, the verdict can not be said to be without evidence to support it.

2. Another point is that the plaintiff's recovery should not stand, because he failed in the duty of diminishing the damages,—that he brought the loss on himself by continuing to use the refrigerator after knowledge that some of his meat would spoil if he used it. Under all the circumstances, we do not think that the verdict should fall on the theory here presented. The jury were correctly instructed as to the law governing this feature of the case. The plaintiff was running a business of considerable size; the refrigerator was not one of the small kinds found in our kitchens or pantries, but was large and expensive. He complained to the defendants; and they, from time to time, were attempting to remedy the situation and to make the refrigerator work satisfactorily. Now, the duty resting on the plaintiff was to use common prudence—to do what an ordinarily prudent man would have done under the circumstances, in order to make the damage as small as reasonably possible. Would an ordinarily prudent man have abandoned the use of the refrigerator and have suffered perhaps a greater loss from the suspension of his business until he could get another? The percentage of the plaintiff's meat which was lost was relatively small. Ought he, for such a small loss, to have abandoned the refrigerator as a thing totally worthless; especially in view of the negotiations going on as to the remedying of the defects? These were jury questions.                    *Judgment affirmed.*