49082. CRANKSHAW v. STANLEY HOMES, INC.

EBERHARDT, Presiding Judge.

Charles H. Crankshaw, d/b/a C. H. Crankshaw Drywall Company, brought suit against Stanley Homes Inc. of Georgia on a contract under which Crankshaw, for the contract price of $52,300, agreed to perform the drywall work for defendant at its Mount Zion Village apartment complex. There was evidence that Crankshaw had completed virtually all of the work except for a portion of Building 10 before defendant terminated the

contract. Defendant moved for a directed verdict on the grounds that Crankshaw's damages had not been sufficiently proven, which was granted, and Crankshaw appeals. *Held:*

1. Where a contractor or a sub-contractor has been prevented by the owner from completing his contract in the construction of a building, generally the measure of damages which he may claim for the wrongful breach is stated in *Campbell & Co. v. Mion Bros.,* 6 Ga. App. 134 (3) (64 SE 571): "Where one employs another to furnish the labor and material to do the work necessary to the improvement of real estate, but renounces the contract prior to the time when the contractor has incurred any expense toward the performance of it, the recovery for the breach of the contract is limited to the difference between the contract price and what it would have cost the contractor in labor and materials to have performed it."

But there is a further rule, as stated in that case, which applies when the contractor has expended money in the purchase of materials which he may have to dispose of at a loss, in which event the rule is: "But if the contract is not broken until after the contractor has gone to expense toward its performance, the net loss incurred by him on account of the amount so expended should be added to the difference between the contract price and what it would have cost him to perform the contract." It is perhaps not a general experience that the contractor has purchased materials which have not been worked into the building and which he must dispose of at a loss, for these are generally returnable to suppliers for full credit. But it may well happen that some item has been specially ordered for use on the particular job which would not be usable on most others, in which event the contractor may have to dispose of it at a loss.

This is fully illustrated in *Campbell & Co. v. Mion Bros.,* supra, where the contractor had purchased $166.46 worth of tile for use on the job and because of the owner's breach of the contract, had to dispose of it for $95. Recovery was allowed for loss of profit plus his loss of $71.46 on the tile.

These rules are also found in 5 Corbin on Contracts,

§ 1094, pp. 510-514. Basically where the contract is wrongfully breached by the owner the contractor is entitled to recover damages measured by his actual expenditure to the date of breach, less the value of the materials he has left on hand, plus the profit he would have realized in the event of complete performance, but in no event to exceed the contract price. If progress payments have been made by the owner, he is entitled to credit therefor.

Where the contract is to be performed for a fixed sum or price, it is immaterial to the owner whether the contractor's expenditures have been prudently made or not, provided full performance would not have resulted in a net loss. If it appears that full performance would have resulted in a net loss, the amount of the loss must be deducted from his recovery.

Some confusion has arisen relative to the correct measure of damages which the contractor may recover against an owner who has wrongfully terminated the contract before completion because of a statement of the measure in *Herrman v. Conway,* 83 Ga. App. 888, 891 (2) (65 SE2d 41), where there was a misinterpretation of the rule which Judge Powell had stated in *Campbell & Co. v. Mion Bros.,* 6 Ga. App. 134 (3), supra. The confusion appears again in *Robertson v. Gore,* 115 Ga. App. 537, 538 (154 SE2d 748) and in *Redman Development Corp. v. West,* 127 Ga. App. 265, 266 (193 SE2d 213) where there were misstatements of the correct measure of damages, as is pointed out in 25 Mer. L. Rev. 97, 108, though the correct result was reached. Insofar as the statement of the measure of damages in these cases (*Herrman, Robertson* and *Redman*) as being the difference in the contract price and the cost to complete the work, *plus sums expended by the contractor up to the time of the alleged breach,* conflicts with the measure which we here declare as a correct one, it is expressly overruled and will not be followed.

2. In the instant case the evidence shows that the contract price was $52,300, and that defendant has paid Crankshaw $37,113.25 on the contract. The measure of damages is not in dispute, but it is defendant's contention that Crankshaw's testimony as to the amount it would

have cost him to complete the job was so uncertain that the amount of damages could not be determined with reasonable certainty.

We disagree. Mr. Crankshaw testified: "Q. Mr. Crankshaw, could you tell the court and jury how much it would have cost you in labor and material to have completed this job? A. Approximately $4,200. Q. All right. How do you arrive at this figure, Mr. Crankshaw? A. I pay so much a unit and so much for material. That's based on other buildings [in the project], Buildings 1 and 2, which were identical buildings — and nine; Buildings 1, 2 and 9, which were identical buildings to 10. Q. In other words, for $4,200 you could have completed the whole job? A. I could have completed the whole job, I believe, for $4,200."

We do not view this testimony as so uncertain as to warrant the direction of a verdict in defendant's favor. Though there should not be reliance upon speculation and conjecture and the proof should be made with all possible specificity, it has been held in countless cases that reasonable certainty is all that is required. Compare *Bennett v. Associated Food Stores, Inc.,* 118 Ga. App. 711 (165 SE2d 581); *Atlantic & B. R. Co. v. Howard Supply Co.,* 125 Ga. 478 (54 SE 530); *Contractors Equipment Co. v. Essex Crane Rental Corp.,* 121 Ga. App. 184 (173 SE2d 270).

Of course the verdict or judgment may not be based upon speculation or conjecture, and thus the evidence must be such as to afford a fair basis for calculating the damages. *National Refrigerator &c. Co. v. Parmalee,* 9 Ga. App. 725 (1) (72 SE 191); *Studebaker Corp. v. Nail,* 82 Ga. App. 779 (62 SE2d 198). As was pointed out in these cases, however, it is not required that exact figures be afforded for the calculation. We find the proof as a whole here to measure up to the required standard and the matter should have been submitted to the jury.

*Judgment reversed. Bell, C. J., Pannell, P. J., Quillian, Clark, Stolz and Webb, JJ., concur. Evans, J., concurs specially. Deen, J., dissents.*

Argued February 7, 1974 — Decided May 20, 1974.

*Charley G. Morris,* for appellant.

*Gambrell & Mobley, Robert D. Feagin, Henry G. Ciocca,* for appellee.

EVANS, Judge, concurring specially.

The trial court directed a verdict for the defendant. I concur with the majority opinion in holding such to be reversible error. The case should have been submitted to the jury.

It is contended that the evidence did not show recoverable damages, or did not fit within the framework of the measure of damages authorized by law in cases of this kind. I disagree.

What is the measure of damages where a building contractor begins performance of the work, and the owner, without lawful excuse, stops him and prevents his completion of the job? Much legal jargon, and mystifying and mysterious language has been used in certain prior decisions of this court, which can only confuse this issue.

When it is boiled down to simplicity, the measure of damages is *the profit the builder would have made if he had been allowed to complete the job.* Or, as has been held time and again, in slightly more complex language, but meaning the same thing: In *Southern &c. Corp. v. Davis &c. Engineers,* 109 Ga. App. 191, 197 (135 SE2d 454): "The measure alleged here is the difference between the total cost of the work under the contract and what the cost of performance would have been to plaintiff. Under the Georgia cases, this is the proper measure. *Wallace v. Tumlin,* 42 Ga. 462 (4); *Jones v. Ely,* 95 Ga. App. 4 (3) (96 SE2d 536); *Luckie v. Max Wright, Inc.,* 90 Ga. App. 243 (3), supra; *Curtis v. Burney,* 55 Ga. App. 552, supra; *Pittman Construction Co. v. Ellis,* 39 Ga. App. 490 (147 SE 420)." Again, in *Turner v. Houser,* 110 Ga. App. 379, 381 (138 SE2d 619): "Damages flowing from the breach do not consist of the out of pocket costs, rather, it is the difference in the total amount to be paid under the contract and the cost of performance by the plaintiff. *Darlington Corp. v. Evans,* 88 Ga. App. 84, 89 (76 SE2d 72)." And in the *Darlington* case, above cited, at page 89, it is held:" "Where a party seeks damages for the violation

of a contract by the other party, the measure of his damages is not what he has suffered by performing his part, but what he has suffered by failure of the other party.' *Pope v. Graniteville Mfg. Co.,* 1 Ga. App. 176 (2) (57 SE 949) . . . and the measure of such damages is *the profit,* if legally ascertainable, which would have accrued had the contract been complied with. *Jester v. Bainbridge State Bank,* 4 Ga. App. 469 (4) (61 SE 926)." (Emphasis supplied.)

In the case sub judice, there is ample evidence in the record to show the owner agreed to pay the contractor $52,300 for the complete job. The builder has paid to the contractor the sum of $37,113.25, which leaves $15,186.75 due by the builder for performance by the contractor of his entire contract. But the owner stopped the performance at this point, which prevented the builder from completing the contract. The contractor did not go upon this job for the purpose of performing a job for which he would be paid less than the entire $52,300, and if the owner had suggested a partial building job for which he would be paid $37,113.25, the contractor would have had the right to refuse, and likely would have done so. So he says to the owner: You obligated yourself to pay me $52,300 if I completed this job satisfactorily. I have kept my contract, but you have not kept yours; you have stopped me as I was nearing completion of the contract, and at a time when you had paid only a part of what you promised to pay for the complete job. I want the $15,186.75 that you have not yet paid (as a part of the $52,300), and I am ready to go forward and complete the job so as to earn that balance. But it would cost me $4,200 to perform until completion, so I will deduct that amount, and the balance that you owe me is $10,986.75.

If the jury believed the evidence of plaintiff, it would have been authorized to return a verdict in his favor for $10,986.75.

Any prior decision by this court which conflicts with the measure of damages in this kind of situation, as set forth herein, should be overruled or disregarded.

DEEN, Judge, dissenting in part.
I would eliminate everything in Division 1 following

the end of the first paragraph on page 842 of the majority opinion. The true rule is stated correctly on page 841 and in quoting Corbin on pages 841 and 842. I would then add merely that anything to the contrary in *Herrman v. Conway,* 83 Ga. App. 888, 891 (65 SE2d 41), *Robertson v. Gore,* 115 Ga. App. 537, 538 (154 SE2d 748), and *Redman Development Corp. v. West,* 127 Ga. App. 265, 266 (193 SE2d 213), is disapproved. There are two basic reasons why I disagree with the remainder of Headnote 1:

1. The key question this court must decide is what is the correct measure of damages when the contract is not broken until after the contractor has gone to expense towards its performance? Judge Arthur Powell clearly answered this question in *Campbell & Co. v. Mion Bros.,* 6 Ga. App. 134 (3) (64 SE 571), ". . . the net loss incurred by him on account of the amount so expended should be added to the difference between the contract price and what it would have cost him *to perform the contract."* (Emphasis supplied.) However, the majority opinion overrules in *Herrman,* supra: "As being the difference in the contract price and the cost to complete the work, *plus sums expended by the contractor up to the time of the alleged breach."* The only misinterpretation in *Herrman* is in the four words *"to complete the work"* instead of using the correct four words of *"to perform the contract"* the former implies only the cost to complete the work from the time of the breach while the latter clearly includes all the cost to perform the contract from the beginning to end. Other than these four words the remainder of the rule in *Herrman* followed in *Robertson* and *Redman,* supra, is eminently correct and the same as *Campbell,* supra, and similar to the rule set out in 5 Corbin on Contracts, § 1094, pp. 510-514. I believe it is important to pinpoint the exact misinterpretation in *Herrman,* supra, rather than a broad overruling without explanation. The error in *Herrman* permits a double recovery by the contractor which is wrong. With the majority opinion's indication that *"plus sums expended by the contractor up to the time of the breach"* is incorrect and should be overruled, to me perpetuates error and is contrary to *Campbell* and Corbin. Once *Herrman* is read

using the correct four words then the observation pointed out in 25 Mer. L. Rev. 97, 108, is no longer valid.

To summarize, the correct formula or measure of damages when the breach of a contract occurs after the contractor has gone to expense towards its performance, is as follows: The contractor is always entitled to his *profit*, that is, the difference in the total contract price and the total cost of performing it from its inception, plus the net loss of sums expended (sums expended up to the time of the breach). Provided, however, if progress payments have been made by the owner he is entitled to this credit and likewise if it is shown the contractor had bid the contract showing a loss the owner is entitled to this credit.

2. The majority opinion is clear that a contractor is entitled to expenses as to materials used up until the time of the breach, less any salvage value, which net loss is to be added to the profit. However, the majority opinion is silent as to labor and other expenses that the contractor might incur. The correct measure allows for all net expenses up to the time of the breach. *Herrman* includes the factual situation of labor and materials. *Campbell* does not limit expenses to materials only. While we are going back to the right measure of damages let us make certain that the contractor is entitled to his profit plus *all* expenses of every kind up until the time of the breach.